**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **VALARIE SMITH** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **CHARLES SMITH** | § | |
| | § | |
| **Intervenor,** | § | **CIVIL ACTION NO. 2:18-cv-00210-D** |
| | § | |
| **v.** | § | |
| | § | |
| **STATE FARM LLOYDS** | § | |
| | § | |
| **Defendant.** | § | |

**DEFENDANT STATE FARM LLOYDS' TRADITIONAL MOTION FOR
SUMMARY JUDGMENT**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW STATE FARM LLOYDS ("State Farm"), Defendant, making this

Traditional Motion for Summary Judgment ("Motion") against Valarie Smith, Plaintiff and

Charles Smith, Intervenor (collectively "the Smiths") pursuant to Federal Rule of Civil Procedure

56 on the basis that no valid contract of insurance existed on the date of loss in question because

State Farm provided proper notice to the Smiths of the non-renewal of their homeowner's policy

before the fire in question. Since State Farm did not have a valid contract with the Smiths on the

date of loss it did not breach any contract with the Smiths. Similarly, State Farm did not commit

any statutory violations, deceptive practices or bad faith. In support of this Motion, State Farm will

show the following:

**I.**
**SUMMARY OF MOTION**

1.      The Smiths own/ed the property located at 1821 Highway 194 in Plainview, Hale County Texas (the "Property"). *See* Ex. D; Valarie Smith Depo Page 9:2-6. At one time, State Farm insured the Property under a homeowner's policy number 84-B5-Z131-9 (the "Policy"). *See* Ex. F-5. According to the terms of the Policy and general principles of contract law, State Farm could elect to cancel or not renew the Policy. *See* Ex. F-5. In the event of such an election, the terms of the Policy required State Farm to "deliver to [the Smiths], or mail to [the Smiths] at their mailing address, written notice of State Farm's refusal to renew not later than the 30th day before the date on which this [P]olicy expires." *See* Ex. F-5.

2.      State Farm elected not to renew the Smiths' Policy in December 2017, prior to its expiration on March 14, 2018. *See* Ex. F-1. This election was based in part on the fact that the Smiths submitted a previous claim for hail damage to the Property and, after receiving some of their policy benefits on that claim, the Smiths failed to complete the work to repair the Property promptly after the date of loss. *See* Ex. F-1 & F-4. Accordingly, State Farm provided written notification of its intention not to renew the Policy to the Smiths. *See* Ex. F-1. This notification occurred on or about February 7, 2018. *See* Ex. F-1. Pursuant to that notification, the Policy terminated on March 14, 2018. *See* Ex. F-1.

3.      The Smiths' insurance premiums were not escrowed. *See* Ex. G. Instead, monthly statements were mailed to the Smiths. *See* Ex. G. The monthly statements included multiple vehicle policies as well as three homeowners' policies, one of which was the Policy. *See* Ex. G & D; Valarie Smith Depo Page 14:11-13, 15:24-16:12. Beginning with the statement for payment due on or before  February 14, 2018, the Policy is clearly noted as "Billing through payment plan has been discontinued. -Policy removed from your account." *See* Ex. G-1. Accordingly, the last

premium payment made by the Smiths for the Policy was in January 26, 2018. *See* Ex. G. Thereafter the Smiths received invoices for all of their State Farm Policies, including the homeowner's policies in force on two other homes.  The policy for the Plainview home was not listed on these invoices and no premiums were charged for coverage of the Plainview property. *See* Ex. G-3 through G-5.

4.      The Smiths made a claim with State Farm for fire damage which occurred on May 1, 2018 ("the fire") to the Property under the Policy. *See* Ex. E; Dean Depo Page 38-39. State Farm denied the claim because there was no policy in effect on the date of loss. *See* Ex. D; Valarie Smith Depo Page 56-57. The denial of this claim gave rise to this lawsuit which Plaintiff filed against State Farm on October 16, 2018. *See* Plaintiff's Complaint. Intervenor joined the lawsuit on June 18, 2019. *See* Plaintiff's Complaint.  *See* Intervenor Original Complaint on file by this Court.

5.      The Smiths allege causes of action against State Farm for breach of contract, violations of the Texas Insurance Code, bad faith, and deceptive trade practices.  Since State Farm had no valid policy in effect covering the Property on the date of loss when the Fire occurred, all of Plaintiff's and Intervenor's causes of action fail as a matter of law.

## II.
### SUMMARY JUDGMENT EVIDENCE

6.      State Farm relies upon the following evidence to support this Motion:

Exhibit A:      Certified Copy of Petition for Divorce

Exhibit B:      Excerpts from the Deposition of Charles Smith taken October 4, 2019

Exhibit C:      Affidavit of Leonard Garcia [PROVING UP PARTS OF 4-16-17 CLAIM FILE]

Exhibit D:      Excerpts from the Deposition of Valarie Smith taken April 18, 2019

Exhibit E:      Excerpts from the Deposition of Kenneth Dean taken May 23, 2019

Exhibit F:     Affidavit of DARRYL HARRIS [PROVING UP PARTS OF THE UW FILE]

Exhibit G:     Affidavit of KELLY THOMAS [PROVING UP BILLS]


### III.
### UNDISPUTED FACTS

**A.     Undisputed Facts of the Smiths' Claim**

7.     Valarie and Charles Smith were married to each other at the time they obtained Policy Number 84-B5-Z131-9 from State Farm covering their residence at 1821 Highway 194, Plainview, Hale County, Texas with a policy period of March 14, 2017, to March 14, 2018. *See* Ex. D; Valarie Smith Depo. Page 12:5-6; 12:24-13:1; 14:3-13.

8.     The Smiths filed previous claims with State Farm under their Policy, one of which was for a hail loss that occurred at the Property on or about April 16, 2017. *See* Ex. C-1, C-2, & D; Valarie Smith Depo Page 30:21-24; 42:1-4 and Ex. B; Charles Smith Depo Page 18.

9.     State Farm made one or more payments to the Smiths under their Policy for the April 16, 2017 hail loss. Valarie Smith Depo Page 31:9-32:2.

10.     The Smiths are in the process of getting a divorce. Valarie Smith Depo Page 13:7-25. They were living apart on the date the Fire occurred. *See* Ex. B; Charles Smith Depo Page 29:25 to Page 30:6. Plaintiff filed an original petition for divorce on January 11, 2018 in the Randall County Court at Law #2. *See* Ex. A. No final decree of divorce has yet been entered. *See* Ex. D; Valarie Smith Depo Page 13:12-19.

11.     The address listed in the Declarations for the named insured, Valarie Smith, was 215 Quail Ridge Rd., Amarillo, Texas 79118. *See* Ex. F-5. Valarie Smith received her mail through a locked mailbox at that address, and she is not aware of any problems by her or her neighbors with the proper receipt of their mail. Valarie Smith Depo Page 11:5-20, 12:15-23.

12.     The Smiths' insurance premiums were not escrowed. *See* Ex. G. Instead, monthly statements were mailed to the Smiths. *See* Ex. G.; Valarie Smith Depo Page 15:24-16:12. The monthly statements included multiple vehicle policies as well as three homeowners' policies, one of which was the Policy. *See* Ex. G-1 through G-5; Valarie Smith Depo Page 14:11-13, 15:24-16:12. Valarie Smith admitted she received a bill each month and she would always look at it, as well as what she referred to as a declarations page every six months. *See* Ex. D; Valarie Smith Depo Page 15:24-16:12; 17:3-11.  Beginning with the statement for which payment was due on or before February 14, 2018, the Policy is clearly noted as "Billing through payment plan has been discontinued. -Policy removed from your account." Accordingly, the last premium payment made by the Smiths for the Policy was in January 26, 2018. *See* Ex. G.  Further, multiple invoices were received by Valarie Smith after February 2018 which did not list the Policy or charge premiums for the Policy.  See Ex. G-3 through G-5.

13.     On May 1, 2018 a fire occurred at the Smiths' Property. *See* Ex. F-3 and Ex. E; Kenny Dean Depo Page 38:15 – 39:21. On May 2, 2018 the Smiths submitted a claim to State Farm for the damage sustained by the Property as a result of the Fire. *See* Ex. E; Valarie Smith Depo Page 38-39.

14.     On May 31, 2018, State Farm notified the Smiths of its denial of their claim based on the nonrenewal of their Policy which became effective on March 14, 2018, prior to the Fire loss. *See* Ex. D; Valarie Smith Depo Page 56-57.

**B.     The Policy**

15.     The Policy identifies the insured as Valarie Smith for the Property located at 1821 Highway 194, Plainview, Texas 79072. *See* Ex. F-5. It states in pertinent part:

**HOMEOWNERS POLICY**

***

**SECTION I AND II CONDITIONS - NONRENEWAL**

\*\*\*

a.  We may not refuse to renew this policy solely because you are an elected official.

b.  We may refuse to renew this policy if you have filed three or more claims under the policy in any three-year period provided that we have given you notice in compliance with Texas law. Such notice will list two prior claims you have made under the policy and will provide, in part, that the filing by you of another claim could cause us to refuse to renew your policy.

A claim under this subsection of this policy does not include a claim that is filed but is not paid or payable under the policy, a claim resulting from a loss caused by natural causes or an appliance-related claim that we are prohibited from using under Texas law.

Consistent with Texas law, an appliance-related claim is a request for indemnification for a loss arising from the discharge or leakage of water or steam from an appliance that is the direct result of the failure of the appliance. An appliance means a household device operated by gas or electric current, including hoses directly attached to the device. The term includes air conditioning units, heating units, refrigerators, dishwashers, icemakers, clothes washers, water heaters and disposals.

c.  If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown in the **Declarations**, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

*See* Ex. F-5.

**IV.**
**ARGUMENT AND AUTHORITIES**

A.      **Standard for a Traditional Motion for Summary Judgment**

16.     Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25; *Ragas v. Tennessee*

*Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

17.     It is clear from the summary judgment proof that State Farm complied with the terms of the Policy and applicable law by giving proper notice to the Smiths of the intent to non-renew the Policy. After giving the Smiths proper notice and dropping the premium for the non-renewed Policy from the Smiths' monthly statements, State Farm non-renewed the Policy. Nearly two months after the non-renewal, the Smiths turned in a claim under the nonrenewed Policy. State Farm properly denied their claim. There is no genuine issue of material fact concerning the non-renewal of the Policy. Furthermore, where there is no valid policy in effect on a given date of loss, an insurer cannot breach a non-existent policy. Where there is no valid policy and no breach by an insurer, a former policy holder is not entitled to recover for extra-contractual claims such as statutory violations of the Texas Insurance Code, DTPA or for bad faith. State Farm is entitled to judgment as a matter of law on all of the Smiths' claims.

**B.     State Farm Provided Timely Notice to the Smiths of the Nonrenewal of their Policy**

18.     In accordance with the terms of the Policy, State Farm notified the Smiths of its decision not to renew the Policy. *See* Ex. F-1. The letter to the insureds was mailed to the address listed in the Declarations, 215 Quail Ridge Rd., Amarillo, Texas 79118 as required by the Policy. *See* Ex. F-1. An electronic copy was sent to the Smiths' insurance agent Kenny Dean, as well. *See* Ex. F-2, F-4, & E; Kenneth Dean Depo. Page 19: 7-15; 35:5-36:17. The letter to the Smiths was sent out on February 7, 2018. *See* Ex. F-1. To further demonstrate that State Farm put the Smiths on notice of the nonrenewal, State Farm notified the Smiths that the Policy would not be on their combined bill after February 2018 and ceased to include charges for this homeowner's policy on

the Smith's monthly statements, and the final premium payment made by the Smiths for this Policy was on January 26, 2018. *See* Ex. G, G-1 and G-2.

19.    An insurance policy constitutes a contract for a period of time covered by the contract. *Tex. Farm Bureau Underwriters v. Rasmussen*, 410 S.W.3d 335, 338, (Tex. App.— Houston [1st Dist.] 2013, pet. denied). An insurer has an option not to renew a policy of insurance if it provides advance written notice of the nonrenewal to the insured as required by TEX. INS. CODE § 551.105. That statute provides:

> Unless the insurer has mailed written notice of nonrenewal or renewal with written notice of change in coverage … to the insured not later than the 30th day before the date on which the insurance policy expires, an insurer must renew an insurance policy, at the request of the insured, on the expiration of the policy.

> TEX. INS. CODE § 551.105.

20.    The Policy State Farm issued to the Smiths mirrors the requirements of the above statute with regard to notice of nonrenewal. State Farm made the determination that it would not renew the Smiths' Policy. *See* Ex. F-5. In order to effectuate that determination, State Farm sent written notification of its intent not to renew to the Smiths in early February 2018. *See* Ex. F-1.

## C.    The Smiths Ceased Paying Premiums in February 2018

21.    As further evidence of the fact that State Farm notified the Smiths of the nonrenewal, State Farm dropped the premium for the Policy at issue from the monthly statement it sent to the Smiths, with a clear indication that particular Policy had been non-renewed. *See* Ex. G-1 through G-5. The Smiths ceased making monthly premium payments for the Policy in question, because they had been advised of the nonrenewal and were no longer being charged premiums for the Policy which was removed from their bill. *See* Ex. G-1 through G-5. The last premium payment that the Smiths made was January 26, 2018. The notice of nonrenewal was sent to the Smiths on February 7, 2018. *See* Ex. F-1, G, and G-1 through G-D.

22.     An insured who fails to make premium payments cannot argue that his policy is still in effect. *See Rasmussen*, 410 S.W.3d at 338. The payment of an insurance premium in accordance with the terms of the insurance policy is generally a condition precedent to establish liability against an insurer. *Id*. If the insured fails to meet this condition, then the policy expires. *Id*. State Farm does not argue that the Smiths' Policy terminated because of non-payment; however, the Smiths' non-payment establishes their knowledge of and acquiescence to the nonrenewal decision by State Farm.

23.     The Smiths contend that they did not receive State Farm's notice of nonrenewal and therefore their Policy should still be in effect. However, Texas law is clear there is no automatic policy renewal that occurs at the expiration simply because insurer failed to send no notice of nonrenewal to the insured. *Texas Specialty Underwriters, Inc. v. Tanner*, 997 S.W.2d 645,649 (Tex. App. – Dallas 1999, pet. denied). Such a construction of law "would be a significant departure from case law applying basic contract principles of offer and acceptance to offers of renewal." *Id*. It would have the effect of creating an automatic policy renewal that could result in a policyholder becoming liable for a renewal premium on an unwanted policy simply because the insurance company never sent a notice of nonrenewal and the policyholder never affirmatively opted not to renew the policy. "Insureds should be able to rely on a policy expiration date without being subject to potential liability for unwanted renewal premiums." *Id*.

24.     For all of these reasons, the Smiths cannot prove the existence of a valid contract between them and State Farm in effect on the date of loss when the Fire occurred. Neither can they prove any breach by State Farm. Thus, their claims for breach of contract must fail as a matter of law.

**D.      The Smiths Cannot Prove Statutory Violations or Bad Faith**

25.     As a general rule, an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy. *USAA Texas Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 490 (Tex.2018). The Texas Supreme Court clarified a prior ruling in another case to state that "there can be no claim for bad faith [denial of an insured's claim for policy benefits] when an insurer has promptly denied a claim that is in fact not covered." *Menchaca*, 545 S.W.3d at 490. Here, the Smiths do not even have a valid policy in effect on the date of the Fire loss – much less a right to recover benefits under any policy.

26.     An insurer's liability for the tort of bad faith is distinct from its liability under its insurance contact. *Lyons v. Millers Cas. Ins.,* 866 S.W. 2d. 597, 600, (Tex. 1993). Insurance carriers retain the right to deny questionable claims without being liable for bad faith, even where the insured's loss is ultimately found to be covered under the policy. *Id.*; *Higginbotham v. State Farm Mutual Automobile Ins. Co.*, 103 F.3d 456, 459, (5th Cir. 1997). Thus, the issue of bad faith centers not on whether the claim was valid but whether the insurer's conduct was reasonable in rejecting the claim. *Id.* at 601. In other words, to prevail on a bad faith claim, the insured must show that the insurer had no facts upon which to deny the claim. *Higginbotham*, 103 F.3d at 489. As long as the insurer has a reasonable basis for denying or delaying payment of a claim, it is not subject to bad faith *Id.*; *Lyons*, 866 S.W.2d at 600; see also *Fritz Industries v. Wausau Underwriters Ins. Co.*, 2004 WL 396258 (N.D. Tex. 2004) (granting summary judgment in favor of insurer under Texas law).

27.     The Smiths' claim for the Fire was not even a questionable claim. There is no genuine issue of material fact - there was no policy in effect with State Farm at the time of the Fire.

28.     All of the Smiths' claims for bad faith and deceptive insurance practices and statutory violations fail.  Because State Farm sent advance written notice to the Smiths of the nonrenewal of their policy, State Farm did not commit any statutory violation and there is no causation or damages to support claims of bad faith or deceptive insurance practices. And since their contract, insurance code, and deceptive practices claims fail, so do their claims for attorneys' fees.  *See* TEX. CIV. PRAC. & REM. CODE §38.001(a) (party may recover attorneys' fees in contract claim in addition to *valid* claim); TEX. INS. CODE. §541.152(a)(1) (attorneys' fees awarded to plaintiff that *prevails*); TEX. INS. CODE. §542.060(a) (liability of insurer for attorneys' fees premised on *liability* for claim under Chapter 542).

## VI.
### CONCLUSION AND PRAYER

Wherefore, State Farm respectfully requests that this Court grant its Traditional Motion for Summary Judgment as to all of Valarie and Charles Smith's causes of action and claims, award to State Farm all reasonable and necessary attorneys' fees and costs incurred by State Farm in defending against this action, and for such other and further relief to which State Farm may show itself justly entitled. In the alternative, State Farm prays that the Court enter a partial summary judgment in all extra contractual claims.

Respectfully submitted,

PACKARD HOOD JOHNSON & PAUL, LLP
Amarillo Building, South Tower
301 South Polk Street, Suite 375
Lobby Box 34
Amarillo, Texas 79101
(806) 374-3300
FAX (806) 374-3381
dee@packardlawfirm.com

By: */s/ Dee Johnson*
  Dee Johnson
  State Bar No. 10705142

ATTORNEYS FOR DEFENDANT

## CERTIFICATE OF SERVICE

I hereby certify that on the 25th day of October, 2019, a true and correct copy of the

above and foregoing was served in accordance with the Federal Rules of Civil Procedure to the

following:

| | |
|---|---|
| Blair Saylor Oscarsson | Brent Hamilton |
| Sprouse, Shrader, Smith, PLLC | Brady & Hamilton, LLP |
| 701 S. Taylor, Suite 500 | 1602 13th Street |
| Amarillo, Texas 79101 | Lubbock, Texas 79401 |
| (806) 468-3300 – telephone | (806) 771-1850 – telephone |
| (806) 373-3454 – facsimile | (806) 771-3750 – facsimile |
| Blair.oscarsson@sprouselaw.com | brent@bhlawgroup.com |
| | |
| ***Attorneys for Plaintiff Valarie Smith*** | ***Attorneys for Intervenor Charles Smith*** |

*/s/ Dee Johnson*
Dee Johnson